IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BELLSOUTH TELECOMMUNICATIONS, INC.,

    Plaintiff,

vs.                                           CASE NO. 4:02cv325-SPM

SUPRA TELECOMMUNICATIONS
AND INFORMATION SYSTEMS, INC., et al.,

    Defendants.

_____ /

## FINAL ORDER

This case arises out of an arbitration proceeding conducted by the Florida Public Service Commission (Commission).  The Commission issued an arbitration order that established terms for BellSouth Telecommunications, Inc. (BellSouth) to provide Supra Telecommunications and Information Systems, Inc. (Supra) access to BellSouth's local telephone network, as required under the Telecommunications Act of 1996.  The issue presented is whether the Commission erred by requiring BellSouth, as a term of Supra's access to BellSouth's network, to continue providing digital subscriber line (DSL) Internet access service to telephone customers who no longer subscribe to BellSouth for local telephone service.

I.  BACKGROUND

The purpose of the Telecommunications Act of 1996 is to foster competitive markets for local telephone services, which previously had been provided on a monopoly basis by companies regulated under state law and by state public service commissions.  Under the Act, Congress preempted all state laws restricting local competition.  47 U.S.C. § 253(a).  Congress also imposed a comprehensive set of affirmative requirements to facilitate market entry by competitors.  47 U.S.C. § 251(c).

Among these, incumbent local exchange carriers (incumbent LECs or ILECs), like BellSouth, who previously enjoyed monopoly status, are required to provide competitors (competitive local exchange carriers or CLECs), like Supra, interconnection and access to the ILEC's network.  47 U.S.C. § 251(c).  These local networks were constructed over the years under the monopoly system and include, among other things, switches and telephone lines (or loops) made of copper wire or fiber optics.  A network connects virtually every home and business in a local service area.

The Telecommunication Act's interconnection requirement promotes competition by connecting the local network so that local customers of different carriers can call each other.  Without the requirement of interconnection, competition among carriers of separate networks would be of limited value to customers because local calls could only be made between customers of the same carrier.  Access to the ILEC's network is also needed to develop

meaningful competition since, as a practical matter, it is impossible for a competitor to rapidly build a new network given the high costs involved.

To these ends, ILEC's are required to negotiate terms for interconnection agreements and to provide access to their network elements to other carriers on a non-discriminatory basis. 47 U.S.C. § 251(c).  A rate for access to each network element is separately priced as an unbundled network element (UNE). A UNE can be leased separately or combined with other leased UNEs.  47 U.S.C. § 251(c)(3).

State public service commissions are vested with the authority to approve or reject interconnection agreements reached by carriers.  47 U.S.C. § 252(a)(1) The commissions may also arbitrate disputes between the carriers about their interconnection agreements or arbitrate the terms and rates if no agreement is reached.[1]  47 U.S.C. § 252(b).  In this way, the states' role in local telephone regulation is preserved and the public service commissions are free to act in accordance with state interests, so long as those interests are not contrary to the Telecommunications Act and  Federal Communications Commission (FCC) regulations.  47 U.S.C. §§ 251(d)(3), 261.  Federal district courts have exclusive appellate jurisdiction to review determinations made by the state public service commissions.  47 U.S.C. § 251(e)(6).

---

[1] The public service commissions may decline to act, in which case the FCC resumes the responsibility for arbitration and approval of interconnection agreements.  47 U.S.C. § 252(e)(5).

## II. STANDARD OF REVIEW

De novo review applies to a state commission's interpretation of the meaning and import of the Telecommunications Act. AT&T Communications of Southern States v. GTE Florida, Inc., 123 F.Supp.2d 1318, 1322 (N.D. Fla. 2000). The arbitrary and capricious standard of review applies to a state commission's application of the Act. Id. Furthermore, to the extent the FCC has issued an interpretive decision implementing the Act, the FCC's decision is entitled to "Chevron" deference, which means that the decision is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984); see also AT&T Corp. v, Iowa Utilities Bd., 525 U.S. 366, 384-87 (1999) (applying Chevron to FCC interpretations of the Telecommunications Act of Act of 1996).

## III. DISCUSSION

Prior to the Commission's arbitration decision, BellSouth was offering DSL Internet access service in connection with local telephone service so that only those who subscribed to BellSouth for local telephone service were eligible to subscribe to BellSouth's DSL Internet access service. BellSouth used the same loop to provide both services.[2] If a DSL customer changed local telephone

---

[2] A loop has a high frequency spectrum that can be used to provide DSL service and a low frequency spectrum that can be used to provide voice telephone service. In re BellSouth Telecommunications, Inc. Request for Declaratory Ruling, WC Docket No. 03-251 at ¶ 25,  (FCC March 25, 2005).

service to another carrier, like Supra, BellSouth would discontinue the customer's subscription for DSL service.  Viewing BellSouth's activity as an obstacle to competition in the local telephone market, the Commission issued an arbitration decision requiring BellSouth, as a term of Supra's access to BellSouth's network, to continuing providing DSL service when a customer changed to another carrier, like Supra, who leased loops from BellSouth to provide local telephone service.  BellSouth objected to the requirement, arguing that the Commission had no basis under the Telecommunications Act, or otherwise, to require BellSouth to provide DSL service.

In response to a petition for declaratory ruling filed by BellSouth, the FCC issued a decision in favor of BellSouth.  In re BellSouth Telecommunications, Inc. Request for Declaratory Ruling, WC Docket No. 03-251 (FCC March 25, 2005). The FCC ruled that state commission orders[3] requiring BellSouth to continue providing DSL service are inconsistent with the Telecommunications Act and FCC regulations.  Id. at ¶ 1.

The FCC specifically found that since BellSouth used the same loop to provide both DSL service and local telephone service, requiring BellSouth to continue providing DSL when a competitor leased the loop for local telephone service, in effect, required BellSouth to unbundle the loop in a manner that is contrary to the requirements of the Telecommunications Act, as determined in a

---

[3] In addition to the Florida, state commissions in Kentucky, Louisiana, and Georgia issued similar orders regarding BellSouth's obligation to provide DSL service.  Id. at ¶¶ 11-14.

recent FCC ruling.  Id. at ¶¶ 25-27.

Keeping a loop as a single element, the FCC noted, created incentives for competing voice and data carriers to enter into innovative arrangements, to deploy new facilities, and to provide different products; thereby promoting competition.  Id. at ¶¶ 28-30.  With the focus on these aspects of competition, the FCC found that the state orders, which in effect unbundled the loops, were contrary to the Telecommunications Act and exceeded the authority reserved to the states under the Act.  Id.  ¶ 17.  Pursuant to the FCC's ruling, to which this Court defers, the Commission's arbitration order in this case cannot be sustained because it is contrary to the Telecommunications Act.  Based on the foregoing, it is

ORDERED AND ADJUDGED that the provisions of the Commission's order, PSC-02-0878-FOF-TP, requiring BellSouth to provide DSL service to customers who do not subscribe to BellSouth's local telephone service are vacated.

DONE AND ORDERED this 18th day of July, 2005.

_s/ Stephan P. Mickle_
Stephan P. Mickle
United States District Judge